Good morning. May it please the court, opposing counsel, my name is MJ Hayden. I'm with the Federal Public Defender's Office and I'm here representing Frank Steffensen. I would like to reserve approximately five minutes of my time for rebuttal. You'll have to help keep track of your own time. That's the total amount. Thank you. In January of 2008, Frank Steffensen was stopped by law enforcement a little bit before midnight in downtown Fairbanks. The stop was for not having proper registration on his tag. As a result of the stop, both Mr. Steffensen's car and his person were searched. The police found approximately seven grams of crack cocaine, a small digital scale, and a sum of money approximately $1,800. Noticeably missing from this stop was anything to do with drug distribution. There were no bundles, there was no packaging, no cutting agent, no ledgers, no phone numbers, no contacts, and most notably, no buyer. The money that Mr. Steffensen had on his person during the trial, there was evidence, undisputed evidence, that Mr. Steffensen was employed as a journeyman electrician, making $32 an hour, working at least 40 hours a week, if not sometimes 60. He had recently been given two checks as a result of being in a halfway house, one for a little over $2,000 and one for over $6,000. He also had cashed other checks, a rent deposit, a paycheck. It's undisputed that the money that he had on him came from legitimate sources. This case was a very weak case for the government, and as a result, the government turned to extrinsic evidence, which is basically the grounds for Mr. Steffensen's appeal. Number one being three instances of 404B evidence, and also the testimony of the government's expert special agent, Niefler. Mr. Steffensen challenges the admission of the 404B evidence on two grounds. One, that it lacked sufficient indicia of reliability. Number two, that the court, Judge Beislein, did not employ the correct analysis regarding 404B and 403 analysis as to whether the evidence was more prejudicial than probative. And also regarding the admission of the 1993 conviction for over 500 grams of crack cocaine, that that conviction was too remote in time and dissimilar to the charged conduct. With regards to the testimony of Special Agent Niefler, Mr. Steffensen challenges the admission of that testimony based on the ground that Special Agent Niefler testified to the ultimate issue. Also, that Special Agent Niefler was called not only as an expert witness, but as a fact witness, and during his testimony regarding facts, he vouched for the testimony of two of the government's witnesses. And those are the issues that I would like to address today. Obviously, there was... Now, as to the vouching, that only applies, does it not, to prosecutors, not to witnesses? Well, Your Honor, I believe that Special Agent Niefler would not have vouched but for the questions of the prosecutor. In other words, the prosecutor set up the question in order to give him an... What's wrong with that? I mean, why can't one witness corroborate another witness? Well, here, he was vouching for, number one, the testimony of a 404B witness, whose testimony was very questionable, as she had, first of all... I'm really trying to refocus your attention on the question I think Judge O'Scanlan raised, which is that certainly there is a prohibition against vouching. The prosecutor is not supposed to stand up in argument or in some other fashion and put the prestige of the U.S. government or make suggestions that we know independently that this other witness is trustworthy. But a witness is testifying, is allowed to testify as to facts. What's wrong with one witness giving testimony that amounts to vouching for what another witness says? In this particular instance, the agent's testimony tended to give credibility to the witness's... Why is that forbidden? What forbids one witness from saying he's truthful? That's a fact. Well, for one instance, in this particular instance... Is there any law at all that applies this prohibition against vouching to the testimony of a witness? Yes, Your Honor. I believe that... That's what I'm trying to get to. If I could just refer to my brief, Your Honor. I believe that there is case law addressing the issue of a government witness, particularly a law enforcement officer, vouching for the credibility of someone who is cooperating with the government. In other words, adding credence to their testimony that would not otherwise be acceptable because of the fact that it tends to infer to the jury that the government has special knowledge of whether this witness is telling the truth or not. But it's not the government. It isn't the prosecutor suggesting special knowledge. It's an agent testifying as a fact witness. In the case I saw you cite was Rudberg, and I meant to and forgot to go look up Rudberg, but the parenthetical description doesn't tell me that what's in question here is testimony of a witness. What's objected to in Rudberg is inferring that the testimony of cooperating government witnesses has been independently verified by the government. It's not allowed. That's what prosecutors run afoul of when they suggest that they know that this witness is truthful. But a witness testifying is allowed to testify as to facts. I just don't understand vouching to be a theory that applies to witness testimony. Well, Your Honor, I believe in this case that Special Agent Niefler testified that he had, and it was his practice to vet the witness before the witness testified at trial to make sure that what the witness had told him was truthful and accurate. Therefore, testifying to the reliability of the witness and suggesting that he had knowledge. And there's a witness who can be cross-examined. I mean, the defense can inquire into what, if the defense decides to let that testimony, doesn't object in relevance or whatever, there's nothing that prohibits the defense from trying to find out what the basis of that is. The prosecutor isn't subject to cross-examination. That's why we don't let the prosecutor make those kind of statements, but a witness is. Yes, Your Honor, but I believe that in this particular instance, it was the prosecutor setting up the witness for this testimony. In other words, he couldn't have testified to this but for the prosecutor's questions. I'll let you spend your time on other arguments. Thank you, Your Honor. The reliability of the 404B witnesses here is in question. Both witnesses had numerous convictions for giving false information to law enforcement officers as well as crimes of dishonesty. Both witnesses had recanted their initial statements regarding Mr. Steffenson. Both witnesses had pending cases before state court in which the same prosecutor, Ms. Crail, not only served as the U.S. attorney in Mr. Steffenson's case, but also as the ADA in the two witnesses' case. Both witnesses were unable to give any specific times, dates, places in which these alleged purchases were to occur. In assessing this, Judge Beisling failed to give the proper analysis between 404B and 403. Here we had a documented crack cocaine addict. I don't think anybody could look at this record and not assume that Frank Steffenson was a crack cocaine addict. So as an addict, he is bound to at one time or another possess crack cocaine. The testimony of the 404B witnesses added little to the probative value of whether on that night when he possessed this crack cocaine, he intended to distribute it to anyone. Certainly he's going to possess if he's an addict. The fact that he had, whether or not he sold in the past, added any credence to whether or not he was going to sell on this particular night. In fact, it amounts to propensity. The fact that he did it before, maybe he'll do it again, and that is unacceptable under 404B. I'd like to reserve the rest of my time, if I may. May it please the Court. My name is Elizabeth Crail, and I'm a Special Assistant U.S. Attorney in the District of Alaska, and I'm representing the United States in this appeal. I think first I would like to address the issue, the fact issue. The appellant has made an initial argument laying out the facts of the case from the defense point of view. However, what is perhaps not as clear from the briefing, although I think it's clear from the record of trial, is that the government's case actually was strong without the 404B evidence. Certainly the 404B evidence was helpful in this case. I wanted to just touch on the basics of the government's case. We were relying on the quantity of the crack cocaine, the 7.1 grams, and as I provided yesterday in a Rule 28J filing for the Court, was a photograph entered into trial showing the actual crack cocaine. And I believe this was important in reviewing it, simply because of the sheer number of rocks of crack cocaine that the jury was looking at, that he was either to be distributing, as the government felt, or purportedly for his own use as the defense position was. There's no scale or legend that tells us what the size of this photograph is. And you're correct, Your Honor, this is actually enlarged so you can see it better. These were testified to be approximately $20 to $50 rocks, or at least that's about the range that was being sold. What's the measure from one end to the other of the whole baggie, of all the rocks? An inch or two? Probably a couple of inches, Your Honor. I'd have to actually lay out the picture. Was there any testimony regarding the connected quantity with an inference of distribution? There was, Your Honor, from Special Agent Niefler, who testified that this quantity was not consistent with user quantity. These are sold typically as $20 to $50 rocks. You have, by my count in the picture, approximately 32 rocks, which would mean even if you called those $20 rocks, you're talking about $32 to $20 rocks, potentially $30 to $50 rocks, depending on who it was being sold to and the individual size of the items. What gets hard in these cases, and I've encountered them before, is that if you were entirely confident that the quantity was by itself conclusive, that this guy isn't simply the quantity, the Costco purchaser of rocks, you probably don't bother to try to go back to 1993 and introduce some of the past history that's now being objected to. What is it that tells us that that past history is sufficiently related to what happened, what every year he was picked up more recently? Your Honor, there's two things for that, and that's a good point. First of all was that the whole issue, the sole question for the jury in this case, was the intent of the defendant with respect to this cocaine. It was purely a state-of-mind case. Was it for distribution or not? Yes, sir. That seems to be the issue. That's correct. So that was the sole focus, the fact that he possessed it, that it was crack cocaine, and the amount of the crack cocaine was not in dispute. So since his state of mind was the sole purpose, the state-of-mind evidence regarding his intent, motive, knowledge, et cetera, was the primary focus, and everything that can help show a defendant's state of mind is important evidence in this case. I need to comment, the Court mentioned going back to 1993, and although one of the issues in the four-part test relates to remoteness and time, I wanted to remind the Court a review of the pre-sentence report laid out his dates in custody pretty well. I went back through and marked those exact dates again just to get the count, and it appears that from 1993 when he was arrested in that case until 2008, the longest period of time that he would have been out of custody was about eight months. Adding it all together, there was eight months, about eight-and-a-half months, a little over six months, four months, three months and two weeks when he was on electronic monitoring, and one month and 17 days between the time that he was released from the halfway house in November of 2007 until he was arrested in the present case in January of 2008. The case law, as I discussed in the brief, indicates that the time spent in custody can be subtracted from the remoteness and time figuring. Given the very short periods of time, relatively speaking, that he was out of custody, that makes the 1993 matter relatively recent. Relatively recent, but also substantially different in terms of quantity. That's correct, Your Honor, and that was... I mean, I concede I'm making what may be a defendant argument to the jury here, but it's not hard to conceive that you've got somebody who's finally figured out that distributing is not a good thing. He spent most of the intervening time in custody, but he's hooked. There's no doubt that this person is himself an addict. So the defendant's going to argue that, well, yes, I had it. He's got no way around that, but it's personal use. And that is the hard question here. It's not utterly beyond the pale that this quantity could be possessed by somebody who has money, who can buy in quantity, who's going to buy it that way but use it himself. And the contemporary evidence of distribution is thin. Usually we get people picked up with a lot more stuff than this guy was picked up in terms of the paraphernalia. So that puts that much more weight or focus on the question of whether the admission of the prior acts, including the cell and the huge quantity, it's certainly persuasive. If it wasn't persuasive, it wouldn't be prejudicial. But is it too prejudicial in the context of the fact that it was really 15-plus years before and involved a very different quantity? I'm not telling you anything you don't know, but it seems to me that's where the tension is in this case. And why is it we should have enough confidence that the prior acts evidence was reliable and does speak to his intent at the time he was arrested for this offense? Your Honor, those are very good points. And I'd like to touch on several issues that relate to that. The first is that the defense did, in fact, make that argument, both in trying to oppose the entrance of the evidence, but also before the jury in trying to treat it. The defense essentially said, well, he used to deal in these large amounts, but he learned his lesson and now he just uses. So they used that to their advantage. The government's position was he got caught back in 1993 with all of the paraphernalia, with large quantity in hand. He had all of the necessary ledgers and the packaging material and everything. But what we presented to the jury was that he was a smart individual and that he had learned from that and he no longer carried around anything that he didn't have to have in order to continue to deliver. He kept smaller quantities on hand. He got rid of the packaging. The testimony was that crack cocaine is frequently sold by the rock and without packaging, that anything he didn't actually need here, and all he had was the absolute necessities, the scale to buy it with, because the testimony was very clear that users do not use scales. That came both from Special Agent Niefler in his extensive experience, 13 years with the DEA, and considerable experience acting an undercover officer and working with informants. It also came from the other two 404B witnesses, the two individuals who testified that they were in fact crack cocaine addicts, that they had been purchasing from Mr. Stephenson in recent years in small amounts and that these were the amounts and that he weighed things out on a scale that they saw, but this was for sale purposes, that they did not see anybody, any users, they were not aware of any users who used scales to purchase crack cocaine. So the evidence, the only conflicting evidence was from Mr. Stephenson himself to say, oh, yeah, I'm a user and I use a scale just because I don't want to be short. Careful buyer. Yes, sir. Yes, Your Honor. But that was the sole testimony before the jury with respect to that. The other thing, and again, the remoteness, and I understand what the court said, but it was 15 years before, but again, if you delete the time that he was in custody, it's actually only a couple of years worth of time that he was actually out of custody between those dates. Finally, the real issue was the fact of the conviction, if Mr. Stephenson was going to testify anyway, and in his post-trial motions he argued that he would not have had to testify but for the other two 404B witnesses, but he said nothing about the 1993 matter. So on the presumption that he would have testified anyway on account of the other two, the 1993 matter would have come in in any case as, and I just jumped on that, rule, I guess I got thrown off here, just a moment. Your point is if he has to testify because of the other two witnesses, then his prior conviction is going to come out. Yes, Your Honor. That was the short answer. So for all of those reasons, I believe that the 1993 matter was appropriately presented. Its limitations were clearly laid out for the jury, and I'll just remind the court that for purposes of drug cases, the similarity relates to the distribution as opposed to possession. These are both distribution charges. The amount is not important that's being distributed, and the type of drug even isn't important. You could have two separate types of drugs. In this case, you had two different types of cocaine, but they're still the same drug. So actually the similarity is very high, considering what the Ninth Circuit has already ruled is considered similar for purposes of drug distribution. So with respect to, I was going to go back. I just wanted to touch on the facts again. We had talked about the scale. We had talked about the sheer quantity. The other two issues was the sheer amount of money involved in here, and although it's true he had an explanation as far as other sources of income, what he never did really explain properly was why he had $1,800 on his person on a Friday night there. He talked about the fact that he had cashed several checks, but he never explained why he cashed those large amounts of checks. He didn't explain why, when he might have to take care of rent on Monday, why he needed to have the money, $1,800 worth, running around town on a Friday night, particularly in light of the fact that he had seven grams, which were approximately $500 to $800 worth, according to the DEA expert, as well. So he had a lot of money and a substantial quantity of cocaine combined. So what's the theory that makes the money incriminating? In this, Your Honor, it was the sheer amount of the money combined with the sheer amount of cocaine. So you infer the sheer amount of money as being the proceeds from sales, but in this case, if he had an independent explanation for having a lot of cash, what inference is there to be drawn? And that's what we disagreed with, Your Honor, and that was my presentation to the jury at the end of the case, was he can explain where money could have come from, although that doesn't say it absolutely positively came from those sources, but simply that that was another potential legitimate source. But I pointed out that he never explained why he had all that money there on that Friday night together with the cocaine and what was to stop him from cashing the checks. Checks are a lot safer, and I pointed that out to the jury. Checks are a lot safer to be carrying around if you don't have a bank account than large quantities of cash, especially if you're going to run around town and buy cocaine. So why, if he wasn't going to use it buying cocaine and that wasn't his explanation, why did he have all that? And there was no explanation. So the only real explanation, as I laid out for the jury, is that this is either for purposes of purchasing more cocaine to sell or it's potentially proceeds from previous sales. And since the bag is full of loose rocks of cocaine, there would be no way to tell how much was originally in that bag. The other was the issue about user paraphernalia. The government's position was that there was no user paraphernalia found in this case. There was a lot of testimony with respect to the crack pipe,  which indicated that Officer Dupie did a thorough search of the vehicle to begin with, that he was looking in that particular place for additional evidence of cocaine, and he did not find any crack pipe. The crack pipe was not found until much later in the case, after the defense had gone out and observed the vehicle. The government's position was that, basically argued to the jury, that essentially one of Mr. Stephenson's friends must have been sent out there to hide it to help his argument that this was actually a user amount of cocaine as opposed to anything else. So that was important. I see that I'm down to a minute. Is there any other area the Court wished to focus on in particular? All right, well, thank you, Your Honor. If I could just touch on a few issues. As this Court has zeroed in on, absolutely the sole issue at trial was Mr. Stephenson's intent. With regard to the 1993 conviction, in viewing the facts there, the fact that it was over 500 grams of powder cocaine, the fact that Mr. Stephenson had $15,000 on him at the time of his arrest in 1993, and the government's argument in closing was that he had learned from the events of that conviction, and now he was a much better drug dealer because he didn't carry packaging materials. He didn't carry large amounts of cash. He dealt in small quantities of drugs. It's similar to this Court's ruling in Powell, where the government first argues that the facts of the case are similar enough to meet the 404B standard, but then after the evidence is in, they flip and argue, oh, this is so much different that he had learned from his mistakes. The government can't have their cake and eat it, too. Either the case is similar enough to be admitted under 404B, or it is dissimilar. They argued both ways, just as the government did in Powell. If his defense was that this was just for personal use, if that was his position, then didn't the district court have a pretty broad degree of discretion in deciding whether or not this 1993 conviction was admissible for purposes of showing intent? Well, certainly the court had to use the guidelines, the four criteria, as well as the 403 analysis to decide whether or not that conviction could come in. It's our position that the court erred because the 1993 case not only was it 15 years old. But you're saying he abused his discretion? Yes, because the facts were so dissimilar. And that is one thing that the court has to take into consideration when it's considering the remoteness of the conviction, as well as whether it was dissimilar or not. Just a few things to touch on. The government made note of Special Agent Niefler's considerable experience in undercover work, when in fact Special Agent Niefler testified that he had only been an undercover officer a few times, and never in Fairbanks, Alaska. Also, I believe the government misstated when it said that the 404B witnesses testified that they had never seen any user use a scale. I don't believe there was any testimony to that effect. And certainly the court cannot speculate whether Mr. Stephenson would have indeed taken the stand until the close of the government's case. Certainly the 404B witnesses played a great factor in that. But as far as whether or not he would have testified in the 1993 conviction would have come in, I believe it's unfair to speculate as to whether that would have happened. As far as the search of the car and the crack pipe, the testimony was that the search of the car happened around midnight. It was pitch black outside, minus 20-something degrees. It was only searched by the one officer, and his search took less than 10 minutes. Certainly it's feasible that he could overlook the single crack pipe in the car, and that was our position at trial. Thank you. Thank you. The case just argued is submitted for decision.
judges: Schroeder, O'scannlain, Clifton